UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiffs,                                    Case No. 09-50084 (07-20529)

v.                                                   Hon. Nancy G. Edmunds

D-1, NASSIF JAWAD TARRAF,

    Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS
ANCILLARY PETITIONS OF ALL PARTIES [42]**

Plaintiff, United States of America, moves for dismissal of all third-party petitions and to enter a final order of forfeiture for $100,000 in United States Currency seized from Defendant, Nassif Jawad Tarraf, on September 20, 2007 at Detroit-Wayne County Metropolitan Airport. For the reasons stated below, Plaintiff's motion for dismissal of all third-party petitions and for entry of a final order of forfeiture is GRANTED.

**I.    Facts**

On September 20, 2007, Tarraf was caught at Detroit-Wayne Metropolitan Airport trying to carry $100,272 into Saudi Arabia, via Germany. Tarraf was arrested and prosecuted for violating 31 U.S.C. § 5316, failing to declare he was carrying more than $10,000 out of the country. (Tarraf Aff. ¶ 6.) Tarraf pled guilty to this charge and the government sought criminal forfeiture of the funds that he was carrying, minus $272 that was returned to him. (*Id.* at ¶¶ 6-7.)

Tarraf owns a travel agency called Dar Alsalam Hajj & Onrah, Inc. (Dar Alsalam) and testified that $95,000 of the seized funds belonged to others as deposits given to him to secure lodging and other accommodations for an upcoming Hajj pilgrimage to Mecca, Saudi Arabia. (*Id.* at ¶¶ 4-8.) In his affidavit, Tarraf describes his agency's booking procedures, which require him to travel to Saudi Arabia months before the Hajj to reserve hotels, transportation, food, and other amenities, all in cash. (*Id.* at ¶ 5.) Tarraf has compiled a list of fifty-three individuals who gave him money to secure a reservation. (*See* Tarraf Aff., Ex. A.)

Thirty-nine of those individuals (collectively, Petitioners) have come forward with separate petitions claiming an interest in Tarraf's forfeited funds as their own. (*See e.g.*, Pet. Zainab Alshatri ¶¶ 1-5.) Each petition states the following: (1) the petitioner gave money to Tarraf as a deposit related to costs for a pilgrimage trip; (2) the petitioner's money was accumulated through savings; (3) the petitioner claims to be the true owner of the money; (4) the petitioner is unaware of any acts by Defendant that would give rise to forfeiture; and (5) the petitioner has a legal right, title, and/or interest in the forfeited funds. (*Id.*) Moreover, each petition requests that this matter be adjudicated by this Court and that the forfeiture action be dismissed. (*Id.*)

Now that the petitions have been submitted, the Government has asked this court to dismiss all thirty-nine petitions based on lack of standing and failure to allege a valid legal interest. (Pl.'s Mot. at ¶¶ 8-10.) It has also requested the Court issue a final order of forfeiture. (*Id.* at 10.) The Petitioners disagree and allege that they have standing to pursue this claim, a legal interest in the seized funds, and that their interest is superior to Tarraf's.

(Pet'r Resp. 6.) As such, Petitioners request that the government's motion to dismiss be denied. (*Id.* at 11.)

## II. Standard of Review

When a third party claims an interest in criminally-forfeited property under 21 U.S.C. § 853(n), the court must conduct an ancillary proceeding for that third-party pursuant to Fed. R. Crim. Pro. 32.2(c)(1). On motion, though, the court may "dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. Pro. 32.2(c)(1)(A). For the purpose of that motion, all facts sets forth in the third-party's petition are assumed to be true. *Id.*

A motion to dismiss a forfeiture hearing can be treated like a Rule 12(b) motion in a civil case, where dismissal is proper if a party fails to state a claim upon which relief can be granted. *Oakland County v. Vista Disposal, Inc.*, 826 F. Supp. 218, 221 (E.D. Mich. 1993); *see also Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004) (holding a motion to "dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint"). The court's inquiry should be limited to whether the petitions set forth "allegations sufficient to make out the elements of a right to relief." *Oakland County*, 826 F. Supp. at 221 (citing *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)).

## III. Analysis

### A. Standing

#### 1. Introduction

To maintain an actionable claim for a defendant's criminally-forfeited property, a third-party must allege an interest in the property forfeited pursuant to the requirements under the Comprehensive Crime Control Act of 1984, 21 U.S.C. § 853(n). *United States v. Campos*, 859 F.2d 1233, 1239 (6th Cir. 1988). Here, Petitioners seem to initially satisfy this requirement by filing petitions in accordance with the statute and "asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section." 21 U.S.C. § 853(n)(2). However, the statute does not merely indicate only an interest in the forfeited property; it must be a "legal interest."

### 2. Legal Interest

Since 21 U.S.C. § 853 does not provide a definition of "legal interest," federal courts have looked to state property law to determine what constitutes a valid "legal interest." *United States v. 2525 Leroy Lane*, 910 F.2d 343, 349 (6th Cir. 1990), *cert. denied*, 499 U.S. 947 (1991) (finding it was "appropriate to refer to state law in determining the nature of the property interest claimed by a third party in forfeiture proceedings"); *see also United States v. BCCI Holdings (Luxembourg) S.A.*, 69 F. Supp. 2d 36, 57 (D. D.C. 1999) (finding the nature of the claimant's interest to be governed by state property law); *United States v. Speed Joyeros S.A.*, 410 F. Supp. 2d 121, 125 (E.D. N.Y. 2006) (finding that Panamanian law should be applied to determine claimant's interests).

In Michigan, cash is considered a bearer instrument and "possession of cash is prima facie evidence of ownership." *United States v. $11,331 in U.S. Currency*, 482 F. Supp. 2d 873, 881 (E.D. Mich. 2007) (quoting *In re Forfeiture of $19,250*, 530 N.W.2d 759, 762 (Mich. Ct. App. 1995)); *see also Ramirez v. Bureau of State Lottery*, 463 N.W.2d 245, 247 (Mich. Ct. App. 1990). Thus, when Tarraf was apprehended at the airport, the $100,000 in

4

cash on his person would be prima facie evidence of his ownership, not Petitioners'. However, that does not mean that possession alone establishes ownership; rather, the "burden of producing evidence regarding ownership rests upon the person disputing such ownership." *Id.* Here, that burden falls on Petitioners.

The appropriate question is whether Petitioners could meet this burden by alleging a sufficient claim that would lead to a finding of a "legal interest" in the forfeited property under Michigan law. The statute requires that the petitioner "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3). In looking to the petitions filed, each appears to allege that the petitioner gave Tarraf between $500 and $5,000 as a deposit for a trip to Mecca. (*See, e.g.*, Pet. Zainab Alshatri ¶¶ 1-5.) But is this sufficient to lead to a cognizable legal interest in Michigan?

Petitioners argue that it was. They claim to have explicitly followed the statutory requirements of 21 U.S.C. § 853(n)(3) in describing the amount, source, and purpose of the money given to Tarraf. (Pet'r Resp. 8.) Moreover, they argue that their petitions corroborated Tarraf's affidavit, which described how much each petitioner allegedly gave to him. (*Id.*; *see also* Tarraf Aff., Ex. A.) In support, Petitioners look to *United States v. One-Sixth Share of James J. Bulger In All Present And Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36 (1st Cir. 2003), which involved a civil forfeiture action where the court addressed both constitutional and statutory standing. *Id.* at 41. The court noted that almost "any colorable claim … suffices" to support constitutional standing. *Id.* In regard to statutory standing, however, the *One-Sixth Share* court focused on two issues

5

that defeated statutory standing: that petitioners filed their claims after the statutory period and that the lien secured by petitioners on the forfeited property occurred after the property had been forfeited to the government. *Id.* at 42-43. It found that the district court did not err in finding that petitioners lacked statutory standing and thus, the dismissal was proper. *Id.* at 45.

The United States contends Petitioners here merely alleged a legal interest in the forfeited property, without offering corroborating assertions to support their claimed legal interest, as is required by 21 U.S.C. §§ 853(n)(2) and (3). (Pet'r Resp. 4-5). As such, it would be consistent with the government's position that the petitions be dismissed for failure to state a claim upon which relief can be granted. The government points to the statute, which expressly restricts the classes of recognized interests that a third party could assert to state a claim upon which relief could be granted:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonable without cause to believe that the property was subject to forfeiture under this section;

21 U.S.C. § 853(n)(6); *see generally*, *United States v. Wheaton*, No. Crim. 05-33-P-S, 2005 WL 2429792, at *2 (D. Me. Sept. 28, 2005), *aff'd mem.*, *United States v. Wheaton*, No. 05-33PS, 2005 WL 3132311, at *1 (D. Me. Nov. 21, 2005) (providing an overview of the relationship between 21 U.S.C. § 853(n)(6), Fed. R. Crim. P. 32.2(c)(1), and standing). According to *United States v. Harris*, 246 F.3d 566, 574 (6th Cir. 2001), Congress intended

6

21 U.S.C. § 853(n)(6) to only apply to the two narrow classes of third parties mentioned—those with legal, vested or superior interests and bona fide purchasers for value—not any others. Since Petitioners do not allege being bona fide purchasers, only section 853(n)(6)(A) would be applicable.

Courts have looked, *inter alia*, at two approaches in resolving this legal interest dilemma: creditor status and "vested" or "superior" interest. The court addresses each of these two approaches in turn.[1]

### a. General Unsecured Creditor

Normally, unsecured creditors do not have standing in forfeiture proceedings because they cannot allege a sufficient claim that would lead to a legal interest. *Campos*, 859 F.2d at 1239; *see also United States v. Watkins*, 320 F.3d 1279, 1284 (11th Cir. 2003) (joining the reasoning of the Sixth Circuit regarding unsecured creditors not having standing because they cannot assert an interest in specific property); *but see United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987) (discussing unsecured creditors having a potential legal interest where an entire estate has been forfeited). In fact, the *Campos* court found that even trade creditors—in that case, a dairy supplier asserting an unpaid debt on an open account worth $108,154.30—would not be able to assert a sufficient legal interest to support standing. *Campos*, at 1235, 1239.

---

[1] In *Campos*, the court analyzed how and whether unsecured, secured, and trade creditors have standing as third parties in criminal forfeiture proceedings. *Campos*, 859 F.2d at 1239. The *Campos* court also examined "vested" and "superior" interests, distinguishing the Sixth Circuit's application from the liberal approach of the Fourth Circuit's (discussed below). *Id.* at 1238-39.

7

General creditors too have been unable to maintain standing in forfeiture proceedings. *DSI Assoc. v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (noting that general creditors do not possess a legal "right, title or interest in the property"); *One-Sixth Share*, 326 F.3d at 44 (finding that general creditors are outside the ambit of what the statute allows for in civil forfeitures and observing that criminal forfeitures tend to be even more restrictive). As the First Circuit further observed in *One-Sixth Share*:

> [a] general creditor can never have an interest in specific forfeited property … Were it otherwise, the court litigating the forfeiture issue would be converted into a bankruptcy court and would not be able to grant forfeiture to the government until it determined that no general creditor would be unable to satisfy its claim against the defendant.

*Id.* (relying on *United States v. BCCI Holdings (Luxembourg) S.A.*, 46 F.3d 1185, 1191-92 (D.C. Cir. 1995)); *United States v. Ribandeira*, 105 F.3d 833, 836-37 (2d Cir. 1997); *Campos*, 859 F.2d at 1237-38). Only the Fourth Circuit, in *Reckmeyer*, 836 F.2d at 205-06, has distinguished itself from this near uniform application of the statute by permitting general creditors to have standing where they can assert a legal interest in a forfeited estate and were bona fide purchasers for value without knowledge of the potential forfeitability. But that provision does not apply in this case because Petitioners do not allege to be bona fide purchasers for value nor do they allege an interest in Tarraf's forfeited estate.

Here, the petitioners allege that they give Tarraf deposits related to costs and fees for a trip to Mecca. (*See, e.g.*, Pet. Zainab Alshatri ¶¶ 1-5.) Assuming, *arguendo*, that Petitioners were able to trace their deposits to the cash that Tarraf was carrying on September 20, 2007, that would not change their creditor status: unsecured, general creditors. To give them standing would be inconsistent with *Campos*, where the dairy

supplier was denied standing as an unsecured trade creditor. *Campos*, 859 F.2d at 1238. As unsecured, general creditors, Petitioners do not have standing.

### b. "Vested" or "Superior" Interest

Alternatively, a petitioner has standing where the "interest was vested in the petitioner rather than the defendant *or* was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property." 21 U.S.C. § 853(n)(6)(A) (emphasis added). The court in *Campos* interpreted this to mean that petitioners are required to make "at least a prima facie showing of a vested or a superior interest to come within the meaning of subsection (A)" to have standing. *Campos*, 859 F.2d at 1238-39 (internal quotation marks and citations omitted). Before looking at the petitions to determine if Petitioners have alleged a prima facie showing of such interests, the terms "vested" and "vested interest" must first be defined.

The *Campos* court looked to *Black's Law Dictionary* to define "vested interest" as: "'[the] present right or title to a thing, which carries with it an existing right of alienation, even though the right to possession or enjoyment may be postponed to some uncertain time in the future, as distinguished from a future right, which may never materialize,'" and "vested" as: "'fixed; accrued; settled; absolute. Having the character or given the rights of absolute ownership; not contingent; not subject to being defeated by a contingent precedent.'" *Campos*, 859 F.2d at 1238 (quoting *Black's Law Dictionary* 1401-02 (5th Ed. 1979)). Based on those definitions, the *Campos* court dismissed the petitioner's claim that it held a vested right, title, or interest as a trade creditor for an unpaid dairy debt. *Campos*, 859 F.2d at 1238.

Since cash is defined as a bearer instrument in Michigan, whoever has possession is presumed to be that instrument's owner. *$11,331*, 482 F. Supp. 2d at 881; *see also Barnes v. City of Detroit*, 150 N.W.2d 740, 743 (Mich. 1967). Thus, once the cash was given to Tarraf, its ownership was presumed to be Dar Alsalam's or Tarraf's. Petitioners, however, disagree and allege in their petitions that "[m]y interest in the … seized funds is based on the fact that I am the true owner." (*See e.g.*, Pet. Zainab Alshatri ¶ 3.) Though this statement may have been true before Petitioners gave the cash to Tarraf, as soon as he took possession of it, Michigan property law recognizes it as his. Accordingly, though Petitioners assert a vested interest in the forfeited property as "true owners," Michigan property law denies them rights of ownership after the cash was transferred to Tarraf.

Even if a third-party does not show a vested interest in forfeited property, it may still be able to allege an interest superior to the defendant's at the time of forfeiture and thus, be entitled to at least a hearing. *Campos*, 859 F.2d at 1239. In other words, if the third-party's interest was superior to the defendant's, it will also be superior to the government's, which stepped into the defendant's shoes at the moment the crime occurred. *Harris*, 246 F.3d at 575 (citing *United States v. Lavin*, 942 F.2d 177, 185 (3rd Cir. 1991)). To have standing based on a superior interest, Petitioners must allege a prima facie showing that their interest in the forfeited property was superior to Tarraf's at the moment the criminal act occurred. Tarraf's only criminal act, as far as the record indicates, took place at Detroit-Wayne Metropolitan Airport on September 20, 2007. (Tarraf Aff. ¶¶ 6-7.)

In support of establishing a superior interest in the seized funds, Petitioners fail to allege anything more than being the "true owner" of the cash. In *Campos*, the court described various types of superior interests that would support standing: liens, mortgages,

recorded security devices, constructive trusts, valid assignments, or the like. *Campos*, 859 F.2d at 1238-39. Petitioners do not allege any of these or similar interests in their petitions.[2]

True ownership of cash—especially cash that was in the hands of another party and is considered a bearer instrument—does not comport with the examples of superior interests described in *Campos*. Accordingly, Petitioners are unable to demonstrate their superior interest in the money when they have not been able to allege anything even leading to a prima facie superior interest.[3]

### B. Constructive Trust

Petitioners alternatively claim that they have a superior interest based on the equitable theory of constructive trusts. This equitable remedy has been imposed where property has been acquired by the defendant though fraud, undue influence, or other circumstances that "render it unconscionable for the wrongdoer to retain title or the benefits derived therefrom." *Oakland County*, 826 F. Supp. at 223 (quoting *Potter v. Lindsay*, 60 N.W.2d 133, 136 (Mich. 1953)).[4]

Petitioners rely on *Oakland County*, which concerned a no-bid sludge hauling and disposal contract given by Mayor Coleman Young to three Detroit businessmen who were

---

[2] As discussed below, Petitioners have alleged constructive trusts in their response to the government's motion to dismiss.

[3] To prevail on the merits, the standard for demonstrating a superior interest is preponderance of the evidence. 21 U.S.C. § 853(n)(6); *see, e.g.*, *United States v. Porchay*, 533 F.3d 704, 709 (8th Cir. 2008) (requiring defendant's girlfriend to demonstrate a superior interest in the seized property by a preponderance of the evidence).

[4] *See also Kent v. Klein*, 91 N.W.2d 11, 14 (Mich. 1958) (finding that fraud at the inception is not a required element, "nor deceit, nor chicanery in any of its valied guises, for it is not necessary that property be wrongfully acquired. It is enough that it be unconscionably withheld").

subsequently convicted of operating a conspiracy under the Racketeering Influenced Corrupt Organizations (RICO) Act for "unconscionably and unlawfully" inflating prices, among other things. *Id.* at 221. The company's property and profits were forfeited to the government after the defendants were convicted. *Id.* Oakland County duly filed a petition with the Attorney General pursuant to the procedures outlined in the RICO Act, 18 U.S.C. § 1963, for reimbursement. *Id.* After ten years, the Attorney General denied the petition for remission. *Id.* The county then sought judicial adjudication of its forfeiture claim and overcame the government's motion to dismiss. *Id.*

The *Oakland County* court recognized constructive trusts as a means of asserting a sufficient interest in forfeited property to maintain standing in Michigan. *Id.* at 223 (citing *Potter v. Lindsay*, 60 N.W.2d 133, 136 (Mich. 1953) (holding that where title has been obtained by fraud or through circumstances which render it unconscionable for the holder of that property to retain legal title, equity will impress a constructive trust and require it be returned to its rightful owner)). But a constructive trust is not a "trust" in its ordinary meaning under Michigan law. Rather, it is merely an equitable remedy administered following certain fraudulent breaches or when an inequitable outcome would result. *$11,331*, 482 F. Supp. 2d at 881-82 (citing *Blachy v. Butcher*, 221 F.3d 896, 905 (6th Cir. 2000)). For a constructive trust theory to succeed, the moving party needs to be able to "clearly trace" the money or property for the trust to be imposed. *United States v. One Silicon Valley Bank Account, 3300355711, in the Amount of $113,952.62*, 549 F. Supp. 2d 940, 955 (W.D. Mich. 2008) (relying on *Biddle v. Biddle*, 168 N.W. 92, 93 (Mich. 1918)).

A constructive trust was applied in *Oakland County* and the court found that the county had a valid, superior legal interest based on the fraudulent circumstances connected

to the no-bid sludge hauling contract and it imposed a constructive trust on the forfeited property. *Oakland County,* 826 F. Supp. at 224. However, the circumstances of that case are distinguishable from this matter. First, the fraudulent RICO activity began shortly after the no-bid contract was awarded and continued for four years before the defendants were indicted and convicted. *Id.* at 221. When Oakland County became a victim to the RICO conspiracy, the title that Vista claimed to have had on its property actually disappeared because a constructive trust had been formed the moment the interest had been fraudulently obtained. *Id.* at 223. Thus, Oakland County could assert a superior interest in the forfeited property against Vista, and ergo, the government.

In applying this analysis to the $95,000 in dispute here, each petitioner would need to allege that Tarraf had obtained title through: "fraud, misrepresentation, concealment, undue influence, taking advantage of one's weaknesses … or any other similar circumstances which [would] render it unconscionable for the holder to the legal title to retain and enjoy the property." *Id.* (quoting *Potter*, 60 N.W.2d at 136).[5] None of the petitioners allege anything to indicate that Tarraf had *obtained title* to their money through fraud or some other deceptive means.

In *$11,331*, however, a constructive trust was imposed absent a finding of fraud. *$11,331*, 482 F. Supp. 2d at 881. In that case, a woman was pulled over by Southfield police—joined by the DEA—who then searched her vehicle. *Id.* at 877. The officers found

---

[5] *Potter* is one of the most oft-cited constructive trust cases in Michigan. The case contains multiple definitions for this equitable remedy, ranging from requiring fraud at the inception and remedying unjust enrichment to using equity in order to "satisfy the demands of justice." *Potter*, 60 N.W.2d at 137.

13

two envelopes, each containing $5,000 in cash. *Id.* At her deposition, the woman indicated that her father had loaned her the money in the envelopes and that she had signed no promissory note or collateralizing agreement. *Id.* The funds were forfeited to the government and the father filed a third-party claim contesting the forfeiture. *Id.* at 876. The petitioner-father's argument was "even if legal title to the cash was lodged in … [his daughter] by virtue of her possession of it … [he] retained a beneficial interest in the funds because they were intended for his daughter's creditors."[6] *Id.* at 882. He further argued it would be unconscionable for his daughter—and the government when it steps into her shoes—to retain the money as that would be unjust enrichment. *Id.* The court found this logic convincing, and reasoned that if the father intended the money to be used to reduce his daughter's debt, it would be improper for her to spend the funds for her personal use. *Id.* Moreover, since the petitioner claimed a beneficial interest in the cash, imposing a constructive trust on the cash would be consistent with his near-legal rights to it. *Id.*

The instant matter is both analogous and distinguishable from *$11,331*. It is important to recognize the similarities, especially because constructive trusts have been imposed in Michigan absent a finding of fraud, as was the case in *$11,331*. *See, e.g.*, *Kent*, 91 N.W.2d at 13-15 (affirming the imposition of a constructive trust on property deeded to an incompetent despite him never having possession of the deed and where the sister, though in possession of the land, was not aware of the transfer); *Blachy*, 221 F.3d at 904 (affirming the imposition of a constructive trust where there was no conclusive demonstration of fraud,

---

[6] The term "beneficial interest" was used to describe the petitioner's interest in the forfeited funds. A "beneficial interest" has been defined as "profit, benefit, or advantage resulting from a contract, or the ownership of an estate as distinct from the legal ownership or control." *Black's Law Dictionary* 156 (6th ed. 2004).

14

only a strong indication thereof). The *$11,331* court said there could be a constructive trust despite no indication of fraud, misrepresentation, or "bad" act on the part of the daughter. *$11,331*, 482 F. Supp. 2d at 882. Applying this to Petitioners' constructive trust theory, one could find that a similar scenario occurred because Tarraf did not perform the requisite "bad" act in acquiring the money. Nor does it appear that Tarraf did anything fraudulent with the funds since acquiring them. Thus, if Petioners looked to Judge Lawson's benevolent language, it would be unconscionable to allow Tarraf, "and by extension the government's," displacement of Petioners as owner. *Id.*

As far as the differences are concerned, *$11,331* involves forfeiture under the Civil Asset Forfeiture Reform Act (CAFRA), 18 U.S.C. § 983, not 21 U.S.C. § 853. *Id.* at 881. Second, there is nothing in the record to indicate that Tarraf was going to use the funds for any purpose other than the legitimate means he described in his affidavit. (Tarraf Aff. ¶¶ 4-8.) This is different from *$11,331* where the court intimated that the daughter might have used the funds for some other purpose. *$11,331*, 482 F. Supp. 2d at 882. Third, when the father transferred the $10,000 to his daughter, he did so by placing the cash in two envelopes, each containing $5,000. *Id.* When the police searched the daughter's vehicle shortly after the transfer, both envelopes were found intact and identifiable. *Id.* This would be consistent with *One Silicon Valley*, which indicated that the moving party would have to be able to trace the money for the trust to be imposed. *One Silicon Valley*, 549 F. Supp. 2d at 955. Here, Petitioners do not allege anything that could link or trace the cash they gave Tarraf with the forfeited funds seized at the airport besides a spreadsheet with names and amounts. (Tarraf Aff., Ex. A.) And, with cash considered a bearer instrument in Michigan,

15

the spreadsheet is probably insufficient to establish the link required to impose a constructive trust.

There is no indication from the record that Tarraf engaged in any of the activities described above to obtain false or unconscionable title to Petitioners' money.[7] In fact, the record indicates that Tarraf obtained the funds from Petitioners legitimately and was to use them legitimately in his business. (Tarraf Aff. ¶¶ 3-7.) Accordingly, Petitioner's argument that they have a superior interest via a constructive trust must fail because of insufficient allegations of circumstances giving rise to this equitable remedy.

### C. Public Policy

Petitioners claim that as a matter of public policy, they should have a superior interest to the seized funds. Petitioners' public policy argument primarily relies on an Eighth Amendment Excessive Fines Clause case where an individual did not notify customs that he was carrying $357,144 in cash when he was trying to leave the country. *United v. Bajakajian*, 524 U.S. 321, 324 (1998). Instead of seeking forfeiture for the entire amount because that would be grossly excessive and likely be a violation of the Eighth Amendment, the district court ordered forfeiture of only $15,000. *Id.* at 326. The government appealed, seeking forfeiture for the entire amount. *Id.* The Supreme Court

---

[7] The government also looks to *United States v. Strube*, 58 F. Supp. 2d 576, 585 (M.D. Pa. 1999), to support its contention that Petitioners should not be allowed to assert constructive trusts as a means of recovery, primarily because Petitioners failed to allege as much in their petitions. As *Strube* indicates, the petitioner needs to allege "any additional facts supporting the petitioner's claim[] and the relief sought" as is required in the statute. *Id.* (quoting 21 U.S.C. § 853(n)(3)). This analysis is persuasive, despite the Third Circuit not permitting constructive trusts as a means of asserting a legal interest under 21 U.S.C. 853(n)(6).

affirmed the lower court's ruling, holding that a punitive forfeiture violates the Excessive Fines Clause only if it is "grossly disproportional to the gravity of the defendant's offense." *Id.* at 334. The Court in *Bajakajian* described the crime as a "willful failure to report the removal of currency from the United States" and that it would have been permissible and lawful to transport the money had that individual reported it. *Id.* at 337. The Court concluded that since the harm he caused was minimal—the mere failure to report—requiring full forfeiture would have been grossly disproportional and in violation of the Eighth Amendment. *Id.* at 339. Petitioners rely on *Bajakajian* to demonstrate that courts have shown leniency before in forfeiture proceedings and that this court should do likewise.

The government responds to this by stressing that constitutional challenges for the underlying forfeiture should not be considered when adjudicating third-party petitions. It looks to *United States v. Porchay*, 533 F.3d 704, 710 (8th Cir 2008), where the court noted that its aim was not to determine whether the underlying forfeiture was legal, but rather, whether the district court erred in finding Porchay did not have a superior interest. Along these same lines, the government emphasized that Petitioners could not assert the Defendant's Eighth Amendment rights. In other words, had Tarraf wished to assert an Eighth Amendment Excessive Fines defense, he should have argued as much during his criminal proceeding. Accordingly, Petitioners Eighth Amendment argument is rejected.

### D. Attorney General 853(I)

Claimants who have had the judicial door closed to them under 21 U.S.C. § 853(n) may not be entirely foreclosed from recovering forfeited property. The criminal forfeiture statute has another provision, 21 U.S.C. § 853(I), that permits relief via petitioning the Attorney General. It provides**:**

> [w]ith respect to property ordered forfeited under this section, the Attorney General is authorized to—(1) grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section;

*Id.* Thus, petitioners may have the ability to seek relief through this alternative means. The Second Circuit aptly promoted this non-judicial remedy to rectify a situation analogous to the case before this Court where a third party possessed an interest in forfeited property but did not meet the standing requirements. *DSI Assoc.*, 496 F.3d at 186. The regulations related to this non-judicial remedy are codified in 28 C.F.R. § 9.1 *et seq. United States v. MacInnes*, 223 F.App'x 549, 553 (9th Cir. 2007). *DSI Associates* further indicated that general creditors were precisely the types of innocent persons Congress had in mind when it enacted this non-judicial mechanism. *DSI Assoc.* 496 F.3d at 187. Petitioners, as general creditors without standing to support an 853(n) hearing, may be entitled to equitable relief by pursuing the matter through the Attorney General's office.

## IV. Conclusion

Where a party fails to allege or make a prima facie showing of any legal right, title, or interest, the district court may properly dismiss the case without a hearing. *Campos*, 859 F.2d at 1240. Here, Petitioners do not allege a legal right, title, or interest in the defendant's forfeited property that would be consistent with Michigan property law. Petitioners do not allege a superior interest either. Nor have Petitioners alleged sufficient conditions to impose a constructive trust. For these reasons, the Court GRANTS Plaintiff's motion to dismiss all third-party petitions and for entry of a final order of forfeiture.

        <u>s/Nancy G. Edmunds</u>
        Nancy G. Edmunds
        United States District Judge

Dated: July 15, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 15, 2010, by electronic and/or ordinary mail.

        <u>s/Carol A. Hemeyer</u>
        Case Manager